UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY MARIE TREDE,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 1:23-cv-1691-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT**<br><br>**(Doc 10, 14)** |

**I.     Introduction**

Plaintiff Ashley Marie Trede appeals the decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act.[1]  Because substantial evidence and applicable law do not support the ALJ's decision, the appeal will be granted.

**II.     Factual and Procedural Background**

On December 30, 2020, Plaintiff applied for DIB alleging disability as May 1, 2020.  The applications were denied initially on April 19, 2021, and on reconsideration on January 13, 2022.  AR 106; 129.  The ALJ held a hearing on March 28, 2023.  AR 36–69.  On May 3, 2023, the ALJ issued an unfavorable decision.  AR 15–35.  The Appeals Council denied review on October 12, 2023, and this appeal followed.

**III.     The Disability Standard**

Under 42 U.S.C. §405(g), this court has the authority to review the Commissioner's denial of disability benefits.  Reversal is appropriate when the ALJ's findings are based on legal error or unsupported by substantial evidence."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is that which could lead reasonable minds to accept a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  Docs. 5, 7.

1

preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The court must consider the record as a whole, not isolate a specific portion thereof. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

A disability claim is evaluated using five-step analysis. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education

and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of May 1, 2020. AR 21. At step two the ALJ found that Plaintiff had the following severe impairments: psychogenic nonepileptic seizures, bipolar disorder, and generalized anxiety disorder. AR 21–22. The ALJ also determined at step two that Plaintiff's gastroesophageal reflux disorder (GERD) and migraine headaches were not severe, and that there was insufficient evidence to establish a medically determinable impairment of fibromyalgia. AR 21–22.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22–24.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> no climbing of ladders, ropes, or scaffolds; avoid all exposure to unprotected heights; simple, routine tasks with only occasional interaction with the public and occasional interaction with coworkers.

AR 24–28.

At step four the ALJ concluded that Plaintiff could not perform her past relevant work as a receptionist. AR 28. At step five, in reliance on the VE's testimony, the ALJ concluded that there were jobs existing in significant numbers in the national economy which Plaintiff could perform: merchandise marker and routing clerk. AR 29. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the alleged disability onset date of May 1, 2020. AR 29.

**V.    Issues Presented**

Plaintiff asserts that the ALJ failed to properly evaluate the medical opinions and that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective allegations of mental dysfunction.

**A.      RFC Generally; The Medical Opinions**

**1.      Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors and the agency will

articulate how the factors of supportability and consistency are considered. *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 2. **Analysis**

On December 29, 2021, Dr. Faurbo conducted a consultative examination at the request of the agency. Dr. Faurbo opined that Plaintiff had <u>marked limitations</u> in her ability to: understand, remember, and perform <u>complex</u> instructions; complete a normal workday and workweek without interruptions from a psychiatric condition; and deal with the usual stressors encountered in a competitive work environment. AR 486. Dr. Faurbo opined that Plaintiff had <u>moderate</u> limitations in her ability to: understand, remember, and perform <u>simple</u> instructions; maintain regular attendance; perform work activities on a consistent basis; perform work activities without special or additional supervision; accept instructions from supervisors; to interact with coworkers and the public. AR 486. Dr. Faurbo opined that all limitations were "due to cognitive and functional deficits associated with a mood disorder." *Id.*

On March 25, 2021, Plaintiff's treating psychiatrist Dr. Manuel completed a "Short Form

Evaluation For Mental Disorders." Dr. Manuel noted the treatment relationship started in August of 2020, identified diagnoses of bipolar 1, depression, generalized anxiety disorder, and personality disorder not otherwise specified. AR 458. Dr. Manuel opined that Plaintiff's functioning was "poor[2]" in the following areas: understand, remember, and carry out complex instructions; maintain concentration, attention, and persistence; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically based symptoms; and respond appropriately to changes in a work setting. AR 461. Dr. Manuel opined that Plaintiff's functioning was "fair"[3] in two areas: understand, remember, and carry out simple instructions; interact appropriately with the public, supervisors, and co-workers. *Id.*

The non-examining consultants, Drs. Schwartz and Aquino-Caro, reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively, and opined in relevant part that Plaintiff could sustain attention and concentration for short simple instructions with limited public contact, and that she was moderately limited in her ability to respond appropriately to work-place changes. AR 100–02; 123–24.

### a. Social Interaction; Performing Work Activities Consistently

To begin, there is no dispute that Plaintiff has at least moderate limitations in her ability to interact with others. Indeed, the ALJ did not conclude otherwise and specifically found that this particular part of Dr. Faurbo's opinion and Dr. Manuel's opinion were supported by findings of limited eye contact, anxious mood, social anxiety, pressured speech, and tired appearance. AR 27. However, the RFC only provided a limitation to occasional interaction with coworkers and the public, but not to occasional interaction with <u>supervisors</u>. This court has previously held that the former limitations do not subsume the latter, and that evidence supporting the former also supports

---

[2] The form defined "poor" as "the individual cannot usefully perform or sustain the activity." AR 461.
[3] The form defined "fair" as "the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described." *Id.*

the latter. *See Leal v. O'Malley*, No. 1:22-CV-0759 JLT GSA, 2024 WL 1304921, at *4 (E.D. Cal. Mar. 27, 2024) (finding the ALJ harmfully erred in adopting the consultant's opinion as to limited ability to interact with coworkers and the public, but omitting without explanation any limitation regarding supervisor interaction).

  Here, the ALJ did make some attempt to explain the omission, stating, "a limitation regarding interacting with supervisors is inconsistent with cooperative or friendly behavior during examinations." AR 27. However, the explanation is not persuasive as Plaintiff's social anxiety limits her ability to interact with others in the workplace. Moreover, Plaintiff's interactions with her treating providers is not analogous to her interactions with others in the workplace. It seems logical to infer that interactions with supervisors are just as anxiety inducing as interactions with peers and the public, if not more so. Unsurprisingly, where a claimant has social interaction limitations, restrictions on peer interaction, public interaction <u>and supervisor interaction</u> are rarely if ever listed in the RFC in isolation. The three nearly always go hand in hand and there appears to be no reason why that should not hold true here.

  Plaintiff emphasizes the ALJs finding that the same evidence supporting social interaction limitations—anxious mood, pressured speech, and tired appearance—also support Dr. Faurbo's opinion that Plaintiff was moderately limited in her ability to perform work activities on a consistent basis. MSJ at 7, Doc. 10 (citing AR 27). Plaintiff explains that "in *Shaibi v. Berryhill*, the Ninth Circuit found that a restriction to occasional interaction with coworkers was consistent with a medical source's opinion that the claimant had 'moderate' social limitations." *Id.* (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017). Thus, Plaintiff reasons, "It follows that Plaintiff's unrefuted moderate limitations in her ability to perform work activities on a consistent basis would require Plaintiff to be off task occasionally." *Id.* However, this inferential leap is not justified. The fact that the Ninth Circuit found "occasional" co-worker interactions to be a <u>sufficient</u>

encapsulation of "moderate" social limitations does not mean it was a <u>necessary</u> encapsulation of moderate social limitations.  Nor does it follow that <u>any</u> moderate limitation in work-related functioning necessarily means that the work activity in question can be performed no more than occasionally.  Simply put, Plaintiff surmises from *Shaibi* that "moderately limited" is synonymous with "no more than <u>occasional</u>," as that term is defined in SSR 83-10, namely 1/3 of an 8-hour day.  That conclusion does not follow from the *Shaibi* opinion or from any other authority.

Plaintiff further emphasizes the VE's testimony that 10% or more off-task behavior would be work-preclusive (AR 65).  However, Plaintiff provides no authority suggesting that a "moderate" limitation in the ability to perform work consistently (a qualitative description) necessarily implies 10% off-task behavior (a quantitative description).  Further, if Plaintiff were correct, that would mean that a "moderate" limitation is per se disabling, which tends to go against common sense and which some courts in this circuit have specifically refuted.  *See, e.g. McLain v. Astrue*, 2011 WL 2174895, *6 (C.D. Cal. 2011) ("[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"); *Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'") (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of Ability to do Work-related Activities (Mental)).

### b.     Stress Tolerance; Responding to Workplace Changes

Dr. Faurbo opined that Plaintiff was markedly limited in her ability to "deal with the usual stresses encountered in a competitive work environment," (AR 486) and Dr. Manuel opined that Plaintiff had a poor ability to "respond appropriately to changes in a work setting" (AR 461).  Plaintiff contends the ALJ failed to incorporate these limitations into the RFC.

8

Although a limitation to simple and repetitive tasks (or similar verbiage) is not a catchall accommodation for all mental limitations, it is notable that "district courts throughout the Circuit have [] concluded a claimant's low tolerance for stress or moderate limitations in dealing with changes are encompassed in a residual functional capacity of simple, repetitive tasks." *Henry v. Colvin*, No. 1:15-CV-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (collecting cases). Similarly, this court has held that a "moderate to marked" limitation or a "poor" ability in these respects is equally accommodated by an RFC for simple and routine tasks. *Pullen v. Kijakazi*, No. 121CV00404ADAHBK, 2023 WL 373380, at *4 (E.D. Cal. Jan. 24, 2023), report and recommendation adopted sub nom. *Pullen v. Comm'r of Soc. Sec.*, No. 121CV00404ADAHBK, 2023 WL 2655808 (E.D. Cal. Mar. 27, 2023).

Here, the limitation in question was identified as "marked," not "moderate to marked." Nevertheless, absent any authority suggesting how to better accommodate such limitations, the above referenced caselaw strongly suggests the RFC here adequately accommodated limitations in stress tolerance and adaption to changing work environments.

### c. Completing a Normal Workday/Workweek Without Interruptions from Psychological Symptoms

As noted above, Dr. Faurbo opined that Plaintiff was markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 486. Similarly, Dr. Manuel opined that Plaintiff's ability to do so was "poor", which the form defined as "the individual cannot usefully perform or sustain the activity." AR 461. In that sense, a "poor" ability to perform the activity in question is tantamount to a "marked" (if not extreme) limitation in the activity in question.

With respect to Dr. Faurbo, the ALJ explained that the opinion of Dr. Faurbo was partially persuasive (B8F/6), but that her opinion of marked limitations was not supported by her findings of good grooming, intact judgment, or insight judgment (B8F/5). AR 27 (citing AR 485). This

discussion falls well short of what the Ninth Circuit requires.  Although no deference is owed to any opinion (examining or otherwise) under the revised regulations, and the judicially created heightened standard of articulation no longer applies, the ALJ still must provide an explanation supported by substantial evidence as to how the factors of supportability and consistency were considered when evaluating medical opinion evidence from any source.  *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

The ALJ references generally that Dr. Faurbo "opined to marked limitations," but the ALJ neglected to recite the marked limitations in question, though there were only two.  The ALJ then references "good grooming" as a countervailing finding undermining Dr. Faurbo's opinion, though it is far from clear how good grooming translates to work-related functioning.  The ALJ then makes an apparent typographical error, referencing "intact judgment, and <u>insight judgment</u>" (emphasis added) though the latter finding was "intact insight," not "insight judgment."

Typos aside, this is not a case where indiscriminate reliance on "mixed clinical findings" will justify affirmance.  Nor is it persuasive for the Commissioner to rely on the common refrain that affirmance is appropriate "if the evidence could reasonably support two conclusions." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

Here, Plaintiff had a brief but tumultuous mental health history, including being diagnosed with a mood disorder (bipolar 1), medicated with mood stabilizers and anti-psychotics, hospitalized for psychogenic seizures, including 6 such seizures corroborated by her family, an additional seizure in the presence of hospital personnel, and reportedly another seizure the day before the hearing.  AR 618, 624, 640, 657.  She presented variously with anxious mood, panicked mood, depressed mood, tired mood, irritable mood, frustrated mood, helpless/hopeless thought content, flat affect and impaired insight and judgment (AR 451, 491, 493, 496, 498, 500, 502, 504, 506, 508, 510, 512, 514, 522-523), though at times she did present with fairly benign findings as the

ALJ indicated.

Notably, the marked limitations in question were identified not only by the Plaintiff's treating psychiatrist, Dr. Manuel, but also by the independent consultative examiner retained by the agency, Dr. Faurbo. As to the marked limitations identified by both examining sources, the evidence in support thereof significantly outweighs the mixed clinical findings relied upon by the ALJ, and remand is appropriate for reconsideration of this opinion evidence.

### B. Subjective Symptomology

#### 1. Applicable Law

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit recently clarified in *Ferguson*, although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ

"cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment other than medication; 6) other measures the claimant uses to relieve pain or other symptom; and 7)) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

### 2. <u>Analysis</u>

The ALJ relied on much of the same reasoning for rejecting Plaintiff's testimony as he did for rejecting the examining opinions. The discussion was deficient for the same reasons explained above. This section will address novel components of the ALJ's discussion as it relates to Plaintiff's testimony.

The ALJ summarized the testimony as follows:

> The claimant alleges her impairments affect her ability to lift, bend, stand, sit,[4] talk, remember, complete tasks, concentrate, and get along with others (B4E/6). At the hearing, she testified she last experienced a seizure the day prior to the hearing. She described feeling dizzy and numb, falling to the ground, blacking out, and having a headache after the episode. Prior to this episode, she testified that her last seizure was in March of 2022. The claimant also testified that her neurologist informed her anxiety could be the cause of these seizures, and she was told by a doctor that she could not drive due to these seizures. The claimant further testified that she stopped working because she had a mental breakdown where she experienced crying, anger, stress, agitation, suicidal thoughts, and difficulty focusing. She also endorsed mood swings, depression, anxiety, bipolar tendencies, and periods of confusion. The claimant testified that her mental health symptoms have worsened, and on a bad day she has difficult time finishing a simple task or finishing what she is doing. Additionally, she testified that she has difficulty leaving the house due to anxiety. AR 24–25.

---

[4] Plaintiff does not challenge any of the ALJ's findings or conclusions with respect to her physical impairments. Thus, this information is included solely for completeness and background.

12

### a. **Objective Evidence**

The ALJ found Plaintiff's testimony inconsistent with the objective medical evidence overall, specifically drawing attention to full orientation and normal cognition despite complaints of disorientation (B9F/12, 16, 18, 22); intact memory, attention, and concentration with adequate fund of knowledge despite complaints of memory and attention deficits (8F/5; B11F/67).

On the other hand, the ALJ conceded that, consistent with reports of worsening stress, anxiety and depression around the alleged onset date, Plaintiff was objectively found to have a tired and lethargic appearance, anxious and irritable mood, dysphoric and flat affect, and helpless or hopeless thought content (B9F/34).

The ALJ further conceded—consistent with Plaintiff's continued reports to her clinicians since the alleged onset date of mood swings, poor sleep, difficulty concentrating, rage, and panic attacks (B2F/1; B8F/3 B9F/22, 30)—that Plaintiff's mental status examinations show depressed and/or anxious mood (B2F/3; B8F/5; B9F/6, 8, 10, 12, 18, 16, 20, 22), pressured speech, tired appearance, distracted concentration, and limited eye contact (B8F/5; B9F/26, 30).  The ALJ further acknowledged that in April of 2022, the claimant presented to the hospital and reported episodes of seizure activity (B11F/7), that her family reported six such episodes, and that another episode occurred in the presence of hospital personnel.  Although brain imaging and electroencephalogram testing was largely negative, the clinicians concluded the episodes were likely psychogenic nonepileptic seizures (B11F/6, 78).

Thus, the objective evidence did in significant part support, rather than detract from, Plaintiff's alleged symptoms. Here, the ALJ's suggestion to the contrary is difficult to square with the ALJ's own discussion of the objective evidence in question, objective evidence which in any case would not be a sufficient standalone reason to reject Plaintiff's testimony. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (explaining that although an ALJ may use

"*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." (emphasis in original)).

### b. Other Considerations

The ALJ noted Plaintiff had improved with treatment, specifically citing an October 2020 treatment note. AR 26 (citing AR 452). The treatment note states "Compared to 2 years ago since last update, there has been improvement - moods have been more stable and is less impulsive. Currently still continues with difficulty sleeping and anxiety/panic attacks." AR 452. Improvement is a relative term, and the baseline against which the improvement was measured here was 2 years earlier, which was almost 18 months prior to the alleged onset date, a time period about which we have little information and which is of limited relevance. Further, the treatment note indicates continued difficulties with sleep and panic attacks. *Id.*

The ALJ further cited evidence of improvement from April 2021 to December 2021. Under "Assessment," the treatment note reflects "Response to Medication and Lab Results: Improved." AR 494. The word "improved" in isolation has minimal evidentiary value, particularly given additional contextual information at the bottom of the same page: "Client is unable to complete daily tasks or function at baseline level without mental health services due to the severity of mental health symptoms." *Id.*

The ALJ further explained that "the claimant indicated she does not need help preparing meals, she reads for three hours per day, and she takes care of three kids (B5F/2; B8F/3; B9F/18)". Importantly, statements from the internal medicine consultative examination should be viewed in context as addressing physical, not mental impediments. Further, to the extent the ALJ's intention was to convey that Plaintiff is independent with activities of daily living, the same cited records

reflect other statements painting a different picture, including that she lives with her mother and kids who do the cooking and household chores.  AR 467.

Finally, the ALJ provided additional commentary which warrants no discussion, including: "treatment record indicates the claimant uses cannabis, which further detracts from the probative value of the claimant's allegations (B9F/33; B13F/26)."  AR 26.

In sum, the ALJ's reasoning for rejecting Plaintiff's symptom testimony was not clear or convincing.

### VI. Conclusion

Remand is appropriate for the ALJ to conduct a new hearing, develop the record as necessary, re-evaluate the opinions of Drs. Faurbo and Manuel on the subjects discussed above, and Plaintiff's testimony concerning the same.

### VII. Order

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 10) is **GRANTED**
2. Defendant's cross motion (Doc. 14) is **DENIED**
3. The Commissioner's decision is reversed and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.
4. The Clerk of Court is directed to enter judgment in favor of Plaintiff Ashley Marie Trede and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **November 20, 2024**              **/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE